Good morning, Your Honors. Jagdeep Seko on behalf of Appellant Gulbir Singh Barapin. May it please the Court. Your Honors, I am going to try to address two issues this morning. The first issue I want to address is whether the Indian government's evidence in this case support a finding of probable cause for the three cases that are before this Court. And the second issue I would like to address, Your Honors, is whether Mr. Barapin's extradition is accepted under Article 6 of the Governing Treaty. Your Honors, the issue of probable cause in this case turns on a minimal threshold for establishing probable cause in extradition cases. And whether this Court wants to lower the standard to allow for foreign governments to successfully extradite individuals based on an extradition request that contains fabricated evidence, including a hearsay statement that was extracted from a record by torching a witness to death. Your Honors, the Indian government has asked the courts of the United States to embrace the practices of their criminal justice system, the ills of their criminal justice system, to effect Mr. Barapin. Counsel, they're asking the State Department. Your Honor, no, I, because the State Department submits the request to to and they filter it through the State Department through the courts. Yes, Your Honor. And the rest of us to enforce a treaty. Yes, Your Honor. However, the issue of whether or not there's probable cause is an issue that is determined by the courts. Now, it is a 1381, the 13, 3184 court, which is at that point, which the district court of the magistrate is acting as a judicial officer. But nonetheless, the issue of whether or not there's probable cause is exclusively within the province of the judiciary. So the courts would have to embrace the Indian government's evidence. And Your Honors, the Indian government's request in this case is, in my opinion, audacious. Fortunately, our courts are not puppets of the Indian government, and we can soundly reject an extradition request that is plagued with fabrications of evidence and chilling human rights violations. One of the difficulties that you have to confront is that we are an appellate court. Yes, Your Honor. According to the case law as I read it, we give considerable deference to the lower court in its determinations. Yes, Your Honor. Such as the credibility of witnesses and the weight to be accorded to their testimony is solely within the province of the extradition magistrate. And a probable cause finding must be upheld if there's any competent evidence in the record to support it. Yes, Your Honors. So that gives us a very deferential approach to what the extradition magistrate did. And my problem with your argument is that notwithstanding all the problems with the evidence, the extradition magistrate, I think, took a very careful look at this and sorted out quite a lot of it and determined that, again, notwithstanding some of the disputes with the evidence, that there was sufficient evidence in there, competent, and believable to support it. Now, how do we penetrate that as an appellate court? Yes, Your Honors. I don't dispute the standard of review, and I submit that Your Honor stated it correctly. I believe, Your Honors, what we're asking for is for the appellate courts to do what it does the lower court view the evidence in the totality of the circumstances. And it's clearly that in the three cases that are before the court, the extradition court did not do that. Within the extradition request, the extradition court, in three cases, denied extradition. And the analysis in those cases was markedly different. I don't have an explanation why. Well, my explanation is that the court was doing precisely what it was supposed to do and when it found information that it regarded as not reliable enough to create probable cause, it said, no, we're not going to grant extradition on these. But then it seemed to take a look at the others and found a difference between the quantum and quality of evidence. Your Honors, the evidence was exactly the same in every case, precisely the same. And that's the problem with the extradition court's decision. Each case, each underlying extradition offense contained the exact same evidence. And in fact, in the cases that are before this court, in one of the cases, case that's FIR number 34, I should qualify what I'm saying, and the evidence was even more limited. So do you think that the difference is that the court looked backwards from the political offense exception and said, well, we've got three here that aren't covered by that, so I'm going to close my eyes on that evidence with respect to these three? Well, Your Honor, I cannot speculate on that. Although I think we also have a strong argument of the political offense exception with regard to two of the cases that are before this court. However, that may have been in the calculus of the extradition court, Your Honors. But the evidence was exactly the same with regard to probable cause. And if I may, Your Honors, explain that in each of these cases, what we have is the same typed English statement purported to be an affidavit that is indiscernible to the alleged affiant. And the Indian government never produced the originals or copies of the originals. They never produced the certification. So you've got an affidavit in English signed by somebody who doesn't speak English? We don't even have a signature, Your Honor. Don't even have a signature. And so, and we don't even have a certification of translation. The explanation that it was a translation was provided one year later by the Indian government, evidencing that someone in the Department of State must have went to the Indian government and said, hey, look, we have a problem with this because we don't know what these type statements are. At that point, the Indian government in 1995 submits an explanation and says these are translations. They don't tell us who translated the documents, but they allege that originals exist. Moreover, they say they recast the evidence. They don't say that these, they don't call them affidavits anymore. They say that they're entries in police laws or statements provided to a magistrate. You know, as we look at the record, and that's what we have to decide, and you agree, I guess, that that's what we do. Yes, Your Honor. The judge says none of the evidence on which it is necessary to rely was obtained by torture. Now, do you agree or disagree with that statement? Well, I disagree, Your Honor, because the district court made an express finding that in one of the cases that the evidence was obtained by torture and the witness was tortured to death. So, I don't understand, Your Honor. Here, we say in the record, where there was evidence of fabrication, coercion, and torture, that he found the totality of the circumstances said, okay, we can't consider that. Didn't he? No, Your Honor. The mistake the extradition court made, and I'm sorry because I don't have all the FIR numbers memorized from the whole request, but for example, in one of the cases where we're dealing with the same type of scenario where we have this typed statement purported to be an affidavit and the court rejects it based on an obliterating affidavit by the same witnessing, I never made that statement that if they have my signature or anything like that, that's been coerced. What the extradition court did is they went through an analysis that should have been applied evenly throughout the case. The extradition court said, you know, I'm going to look at the totality of circumstances here. I'm going to look at what the Indian government's pattern and practice was in this case with regard to this relator, and in doing that calculation, the extradition court found that a probable cause was obliterated by the affidavit submitted on behalf of Mr. Butterpin by the eyewitness who was the government's witness. We have the same exact scenario in two other cases here, and Your Honor, I am actually at a loss to distinguish the cases of how they are in any way distinguishable. In the interest of time, you might move to the political offense exception. Do you argue it protects your clients from extradition because these were political offenses? Yes, Your Honor. With regard to case FIR number 89, which is a case where the court found was already a political offense, I think we should examine the alleged actions by Mr. Butterpin because the political offense is being applied to him, and each and every one of his alleged actions in that case, for clarification, Your Honor, I'm going to discuss the facts a little bit. This is the case where the alleged Sikh guerrilla separatists went to the home of the counterinsurgents and attacked them. In this case... This is the case where Kulwant Kaur was murdered? Yes, Your Honor, and that's the issue in this case. The extradition court found that the political offense applied but excluded Ms. Kaur's murder in this case. Because she was not one of the political people involved. She was a wife of somebody? Precisely, Your Honor. So the extradition magistrate concluded murdering the innocent wife has nothing to do with the political offense doctrine. What's the problem with that? Well, and Your Honor, I'm going to back up and state that I think there's a problem with saying that there's probable cause for Mr. Butterpin committing any crime in this case because he was not involved at all in the murder of Kulwant Kaur. But here what we have, we know what the intent was of the guerrilla separatists. The guerrilla separatists went to that home to eliminate the counterinsurgents. There is no need for any inference otherwise because that was a specific finding by the court. The court also... And the wife was not a counterinsurgent? Yes, Your Honor, and I submit that she was not. And then we should examine Mr. Butterpin's actions and examine whether or not anything he did would pluck him out of the protection of the political offense exception for this case. And his alleged actions are being involved in the death of two counterinsurgents, standing guard, for lack of a better term, over the other family members. Sounds very much like typical British-American law that a member of a conspiracy is responsible for the acts of all the conspirators, especially in a mass murder. Well, yes, Your Honor. Now, if the court was to stretch the conspiracy to include Ms. Kaur in this case, then the conspiracy is political because the offense is political. So I think either we don't... We can't establish a conspiracy in this case to murder Ms. Kaur because Mr. Butterpin's actions don't allow for that inference. However, if the court wants to extend the conspiracy, the political conspiracy in this case, then her death would be in furtherance of a political offense. So, Your Honor, I see it ultimately as a zero-sum game. Either there's not probable cause to find that Mr. Butterpin was involved in a conspiracy to murder Ms. Kaur, and I think the facts establish that he was not involved in any such conspiracy, or moreover, if there is a conspiracy, then he's protected by Article 6, both based on the American incidence test and also based on Article 6, the plain language of Article 6. In addition, Your Honors, I would like to state that I'm not saying that if Mr. Butterpin was involved in the death of Ms. Kaur, that he would be protected by Article 6. It is not our position that Article 6 protects the murder of civilians. However— What about the next case, the Sahib Singh and Mahan Ram? That's case number 100. I don't see any argument on that in your brief. Are you conceding the political offense issue as to that case? Yes, Your Honor, I concede that, Your Honor, except that we do—I would like to reserve for the court that we believe maybe the Article 6 tree language may cover it. Of the language requisition for Mr. Butterpin's surrender would cover the entire request. But yes, Your Honor, on the facts, we do not believe that it meets a political offense exception under the American incidence test. What about 34, then, the ambush? Yes, Your Honor, for us, our position is that this is clearly a political offense. Every factor in this case militates towards finding a political offense. What we have in this case, we have— before I address the facts, one of the problems, of course, with applying the political offense exception is almost by nature always violent because you're required—it's only implicated when you have a violent political uprising. So in this case, what we have is we have perpetrators who are alleged Sikh guerrilla separatists seeking a liberation of their Punjab province from the Indian government, attacking the other side of the conflict, which were government officials and police officers who were armed. So the Sikhs attacked and ambushed a car involving a driver and passengers, a former member of the legislative assembly, the deputy commissioner, a constable. That's the group that was attacked. Yes, Your Honor. And I think the other two—and I think the individuals were— the police officials were provided to protect these individuals, again, identifying them as a political target during that period of time in the Punjab. The mode of the attack was similar to what the Department of State describes to be where there's an ambush by the guerrilla separatists. Now, the court said—and you know this— the circumstances surrounding the murder charges in this ambush were fully considered. The court noted the evidence established that a former government official, an active government official, their police-affiliated bodyguards were agents of India. The evidence did not explain any other circumstances of the attack or motives. Whether this attack was a domestic terrorist attack or politically motivated could not be determined based on the evidence. So Berrapin failed to meet his burden of proving that it was. The court said, you know, the burden's on you. You didn't explain what the motive was, so you lose. And, Your Honors, in this instance, applying the political offense, the court is applying law to facts, so our position is that the court's review is de novo. And I don't think there's a dispute of the facts. Our position is under any political offense exception test. What the courts are required to do is, again, look at the inferences here. We have Sikh guerrilla separatists attacking government officials and police officers. The guerrilla separatists, after the attack, removed the weapons, do not rob the victims, but remove the weapons ostensibly to secure more arms. There is no evidence that any one of them committed any other act that would remove the offense from the Article 6 protection. And moreover, we have the Indian government charging this crime as a political offense under the security legislation. So I can't imagine more facts that would militate in finding the political offense exception other than having one of the alleged come in and say, this is why we did it. And I think the political offense doctrine is highly charged. For example, would Timothy McVeigh, who blew up the Oklahoma Federal Building, be able to claim that that was a political offense such that he should not be extradited to the United States to stand trial? Absolutely not, Your Honor. I, although, and I will agree with Mr. Boone and the government on this, that much of Quinn is dicta. And I believe that the test that's set forth in Quinn is the correct test. And what is very important to always examine is whether or not there is an uprising that implicates the political offense. In the United States, there is no uprising that would implicate. Timothy McVeigh in the newspapers would have said at the time there was a militia uprising. Yes, Your Honor, but I don't think there is. I can't imagine that he will be able to support that because there doesn't. I just see there's no evidence for that. However, I guess if we were to extend the hypothetical and say that there was a militia uprising in the United States, then McVeigh would have a lot of other hurdles because his crime was clearly directed exclusively at civilians. It was to create. It was the Federal Building. Yes, but it was the purpose of it was to create social chaos. We don't have two sides of a conflict as we have in this case with fully armed police constables. McVeigh says this was part of an army episode in retaliation for Waco against the federal government as part of the militia movement to take back the country from the wrong people. Yes, Your Honor, and therein lies the important issue here. The effect, the political, the focus of the political offense exception isn't so much on the motive, but it's on the offense. We examine the offenses in the case and so and see what the inference is. And in Quinn, the court states clearly there'd be a lot of problems if you start making alleged relators, alleged conspirators come in and testify because they're only alleged of committing the crime. They may very well be innocent, like in Mr. Burpin's case, but the evidence is overwhelming that he was not involved in this case because the only eyewitness in this case said he was not involved in this case. Would you like to reserve some time to respond to the government? Yes, sir. Thank you. Thank you, counsel. We'll hear from the government. Good morning, Your Honor. Stan Boone on behalf of the United States and on behalf of the government of India. In looking at an extradition request, Your Honors, we need to look at two items, and that's the focus of the extradition hearing. The items are 18 U.S.C. 3181 as set. That's the basis by which Congress gives the courts the ability to look at extradition requests. The second aspect that we must look at is the treaty, the extradition treaty that existed at this time between the United States and India. That is the documents, that is the limit of the courts in the analysis in the context of extradition. First aspect is the probable cause here. Now, is the probable cause absolutely perfect? No. Is it perfect? That's an understatement. I mean, the probable cause, frankly, is a mess. Isn't it? No. It is a mess to read that extradition request. I will agree with you on that just in terms of the English language, absolutely. But in terms of the request itself, when you distill it down to its essence, and look at really the court, and I know the court at the district level looked at this, but the request itself, if you read the, it does not purport at any point in time to be these are the actual affidavits. What it is, it's clear that it is a translation of it. But didn't the district court conclude that an awful lot of this evidence simply wasn't reliable enough to amount the probable cause? In three cases, based upon what the court did, was it took the evidence, and I guess the first threshold that I've got to talk about is, is the evidence competent within the meaning of the statute? Right. And the government submits that it is competent for admissibility. Now, once you're at that stage, and that's 3190 coupled with the certification from the Secretary of State's Delegee in India, once we have it in there, then the district court considered the evidence. But what the district court then did in negating probable cause in two of the three cases in which negated probable cause was said, here is affidavits from the relator in this case, and this appears to entirely contradict the statement, one of which was a statement from a witness who had testified at a subsequent trial that refuted her previous statement. And the district court then took a look at that and said, well, this entirely refutes it, and therefore, I'm not going to consider it, and then probable cause is lacking there. With the two additional cases, those were 220, FIR 220, I believe, FIR 57, if I've got my numbers correct. The district court then said, well, here's an affidavit that this was acquired through means of torture, and therefore, we're not going to rely upon that statement. Torture to what extent? Torture to the extent that the individual who gave the statement previously was tortured to give the statement. Then there was a second allegation that the torture had resulted in death of one individual. And the district court took a look at that and said, okay, I'm not going to consider that as probable cause and counted that out. Yes, it is a mess in terms of what we traditional American courts are used to looking at in terms of search warrants, criminal complaints. Here's information. We got it from somebody by killing him. Well, a couple of things about that is that the government, those declarations were received late in the process by the government in terms of whether we could verify it. But, you know, even if we had gotten it early in the process, the way that the court to send some sense of reliability to those statements would probably have been to send an FBI agent or some sort of federal agent out to India because we're turning into a trial here. We're turning into a trial. Here's an affidavit says it was acquired through torture. The government has no ability to check the veracity of that statement. We don't know what the circumstances relying if this person was threatened or what. There is no way for the government to verify that information other than to send an agent out that we can trust in a sterile environment to make sure nobody's there to threaten them or their families and say, all right, give us a statement. But my point is that's not what extradition is about. Extradition is not about a mini trial on the merits of the case. It is a probable cause determination. And we cannot be getting into these types of exercises when we are dealing with two sovereigns. So how does the probable cause then stack up in the three cases we have before us, which seems when the evidence seems to be refuted by the same kind of information that took apart the other? Well, if the courts refer into the same type of information, meaning that they were tortured, therefore they must have been tortured in this circumstance. There's nothing to suggest that that's the case. I think what the relator or the petitioner is doing in this case is saying, look at the totality, everything in this case and just throw it here. And this sounds bad. There's torture and look what India does, et cetera, et cetera. And frankly, that is something that is delegated to the Secretary of State in determining the torture aspect and something that courts should not be getting involved with in this context of throwing everything here and saying, all right, let's just sort it out in terms of international relations. And that is my point with regard to the extradition proceedings, our limited proceedings. Nowhere in the United States when we have an extradition from somebody from Maine to California, do we go through this exercise. The exercise we go through and in inter-district transfers in the federal system, formerly Rule 40, now five, is here is the individual that the other district is seeking. Not even a problem. That's the way the European community deals with this. So you throw in probable cause, you get into a whole different ballgame. Absolutely. You have an additional requirement of probable cause, which you don't. And I think that, frankly, that that from the extradition law, that is the basis because of the nature of the distance with the one is traveling a different foreign, different type of legal system per se. But this court should not be in the position of saying India's legal system is not the perfect legal system. It is not the best legal system. It's not something that we would subscribe to. And there are changes that we can do with that system. That's not what this court is about. And that's not what this court should get in the exercise of doing. But again, if you focus back on the extradition request and read it, I don't think there's any purported that this is the affidavit. You go through and hear the statements and says, I do solemnly swear. And it says affidavit. And it goes through and it's in English. And then at the end, there's just a SD written and then there's a name. And that's clear that that's not a signature, but taking the document in and of itself. And that is the packet. That is the extradition packet. Putting it together, certifying it, and here it is. There is no requirement in the extradition law. There's no requirement under the treaty that these be that there be a translation or that you have originals. All of this is frankly, is red herring to say this is really, really bad. And here's the reasons why. But if you distill it down to its essence, the probable cause exists in this case, the probable cause. And the district court went through an extensive analysis with regard to probable cause. And while the government may dispute aspects, especially in the context of the political offense exception, that's not for me today because I can't appeal the extradition request. I am here arguing and supporting three requests. And what about the political offense exception on number 34? That seems to be their strongest argument. I mean, here you have a case where the enemy fights the enemy. And afterwards, there's no indication at all from the evidence that it was a robbery or that it was personal, such as in the case possibly of the wife or whatever it is. This just looks like the two groups going after each other, the Khalistan Commando Force against the government. Why isn't that on its face a clear case that would admit to the political offense exception? 34 is the one where the wife was killed. No. 34 is the murder and ambush of the driver and passenger former member of the Legislative Assembly by the Khalistan Commando Force. Yes. With regard to that, and I think this is where the petitioner misses the mark on the political offense exception. And the government argued this at the lower level, that at some point in time, in order for the political offense exception to apply, and if you read the political offense exception, that the petitioner must somehow make an allegation or statement that, yes, they did this crime and the reason had a political character. If you read Section 6 of the Treaty between India and the United States, it talks about an individual who is being extradited for offenses that are political. Those would be the common pure political offenses. Espionage. Espionage, sedition, those types of things. Those are usually victimless crimes. The latter part, it says, or where the request, and it puts the burden upon the petitioner, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offense of a political character. Yes, that is the relative political offense, and a requirement of that the government submits is that the individual say that, yes, I did this and it was for a political character. And now, where are, it doesn't say that in Article 6, that this has a conditioned precedent that he admits I did it. Where does it say that? Because it talks about for a crime that he's being done for a crime of a political character, and the burden's on him to say, I did this crime because of the nature of the political character. And if taking that coupled with the cases that in Ahmad, et cetera, those cases, they talk about the context in which an individual is committing the crime. There is no case out there that holds in the extradition context that we can just say, I'm a member of a student federation and I'm being attacked by the government and these are just trumped up charges. There's nothing to suggest that that is what the political offense exception is about. I frankly think that is probably a probable cause issue, but I, again, think that you can't submit evidence to that context. I think it's ultimately an issue on the facts. It's not enough just to prove this was clearly a case involving political character. You have to admit that I did it? Well, how can it be of a political character? We can conceive of any number of scenarios. You could have a film of two groups going after each other with guns. One group saying I'm part of the Khalistan commandos and the other group saying I'm part of the government. Right. And you can see from the movie that was on television, it's clearly a political war over a separationist or whatever. Right. And then you've got this guy and they say, well, he's one of the group. And does he have to say, yeah, I did it in order to take advantage of something that's clearly provable as a political war? Yes, absolutely. He would have to say, he would have to say, I'm sorry, Your Honor. It just says he has to prove that it's an offense of a political character. He doesn't doesn't say he has to admit he did it with a view to try to punish him for a crime or offense of a political character. And having a hard time finding language in there that says he has to admit that he did it. I don't see how you can do it other than how do you apply that at the trial court level where a petitioner comes in and says, OK, there's two groups here and they're doing it, but I had nothing to do with it. How can you step back and say, well, if they're extraditing me, it's a political character. I have nothing to do with this crime. I wasn't there. It had nothing to do. I'm doing trying to claim that I did. I mean, you say you have to surrender your defense that you didn't do it. Well, I think that you have to say that I I I'm in the context that this was to the extent that we did it. And it was for the reason of a political nature. And I think this is where in the second aspect, are you admitting that on its face, this looks like a political offense? No. And the failure is that he doesn't admit that he did it. No, I'm not. What I'm ultimately getting to is Quinn's analysis. And this is where I disagree with counsel's assertions of how Quinn Quinn talks about in the dicta portion about the motive of the revolutionary, which I think is just is highly it is it is a position that this court should absolutely not take in that the motives because there is a specific statement in Quinn that whatever means by which the revolutionary gets there, that's for them to do. We must look at the motive of the revolutionary. And what the district court said is while it was dicta, the district court went through and applied Quinn's analysis to the cases. And hence, this is why the political offense exception affected the remaining five cases. Why the political offense exception didn't apply is because here were these government there were government officials. Therefore, that had to fall within the political offense exception. And to take the Oklahoma City aspect, if you applied the position in Quinn, Oklahoma City, if Timothy McVeigh had gone to a country that had similar statements, similar aspects in the treaty with regard to the political offense exception. Absolutely. Because it's the motive. It is the subject matter, the subjective mind of the revolutionary that determines that is the analysis. It's a difficult test to apply in the context of a trial court level and say, hey, you know, it may be unreasonable. Maybe it's something that American jurisprudence doesn't accept. But on the other hand, this is how it is. If that includes killing civilians, if that includes genocide, that is the intent of the revolutionary. And that example should not be followed as a basis as a test to determine the incidental to test. And so to answer the court's question about the motive simply did not do that in that context. I get this argument is more basic than you. It apparently recognizes in your argument, I think what he's saying is we have standards. India is a government. It knows those standards. Here's what it sent us. Tortured information, affidavits that aren't affidavits, statements that aren't interpreted, statements that aren't signed. He's not saying, as I gather from your argument, they had to send us interpreted statements or they had to send us affidavits as we would acknowledge them in America. He's saying what they've sent us isn't enough for a person who's deciding whether to extradite, to rely upon an extradite and own its face. Here are the things we see and you ought to set it aside. I gather he's making a general argument along those lines. Do you gather the same thing? Do I come to that same analysis? No, because and what I'm what I would like to do is have have not bring in all of this extraneous, you know, temperance information to say, hey, look at all of this in the context. Look at the extradition request itself. Granted, it is a difficult form just to just to sit down and comprehend in terms of the process from American jurisprudence to Indian jurisprudence in terms of the writing style, et cetera. But in looking through it and how they constantly put things in the middle of a sentence in looking through and distilling it down, what it is saying is that this is the individual who did it. Kulveer Singh Berrapin of this particular. I think what the Indian government may have went wrong is they maybe put too much information with regard to it, which it was just it had errors in it. It had errors in it. And when it says affidavit, again, I submit to the court that that is a red herring, that if you take the extradition request and read it in its entirety, coupled with the supplemental and then the second supplemental and the second supplemental is a result of conduct on the part of myself in that when we got to the extra, when we got to the detention hearing, these were issues that were frankly raised at the detention hearing in the extradition. And it was my request that let's try to avoid these issues, frankly. And I think that that is clear. And I think Mr. Sekhon will know that. And so my request was made. And that is why the 1998 request comes around. Now, maybe in hindsight now saying, well, now that this is what the government has done, maybe that's what I shouldn't have done. But I attempted to avoid these particular issues in getting this done. And sending a request, it's not like picking up the phone and saying, India, could you please do that? It takes time. And I think that that's, again, the nature of the request. You have to look at the request itself. You shouldn't be bringing in evidence to refute that evidence, because that's what a trial about. That's not the bottom line of the court's decision, in your view. The bottom line is that the district court should be affirmed. The district court went through an extensive analysis that applied Quinn, even though the dicta portion of Quinn still applied it. And we are stuck with that. It should be affirmed, because we have defined, we have described the person we want, and identified him with certainty. This is the person. And what else? And a probable cause. And that this person committed the crime. I think those are the only disputes. I think there's no dispute that the treaty was in effect. That the crimes that are set here are within crimes that are covered within the treaties between the two countries. That is what I'm saying. And that there is probable cause here. And that the district court went through that analysis. And that that finding should be given deference in that. In other words, you'd have to look, you would be then acting in a de novo stance to look through that entire record. And that's not what this court is about. It is clear that the court went through an extensive analysis in terms of weighing the evidence, the probable cause, weighing the political offense exception, and making its determination that these three cases that are described here are just. And the last aspect that I did want to just briefly hit on is the aspect of the murder of Colwood Carr, the woman, the wife. And I think that the discussion about conspiracy misses the basic understanding of criminal conspiracy in the United States. And I cited in my brief, which was part of the extradition request, India's interpretation of their similar to aiding and abetting conspiracy statutes that are focused. In American jurisprudence, there is no requirement in a conspiracy that the conspiracy to commit murder, that the conspiracy to commit murder be directed at an individual. All that it is, is the object of the conspiracy is murder. And that as a result of what happens as a result of that conspiracy, results in murder, then so be it. There is a conspiracy to murder. The fact that Colwood Carr may have been not directly, this is the person we intend to kill, misses the mark. Because that's not a requirement of American jurisprudence law. Even if I'm intending to shoot somebody else and it goes over that way, that's transferred intent in the intent to kill aspect in a non-conspiracy relationship. So the fact that she was killed, she was killed on that night, it's justifiable. That is probable cause, clearly under the Indian statute, clearly under American law. And no authority has been cited to the contrary that I have to intend to kill that individual there as part of the conspiracy. And that's why that argument fails. Thank you, counsel. Your time has expired. You may respond. Your Honors, we are not saying that Mr. Barfin could not have been extradited under any circumstances. We are saying that Mr. Barfin could not be extradited based on a typed piece of paper that we do not, we still do not know what it constitutes. There is no district court in the United States that would certify or issue a warrant based on that piece of evidence. Moreover, there is no court in the United States that would issue a warrant based on that type of evidence when they knew that the police officer that's coming to them tortures people and fabricates evidence related to that particular person that they're trying to And when, and then when we consider the obliterating evidence, I don't know how this staggering evidence can stand up to it when we have the witnesses saying, hey, look, I didn't make that statement. And Your Honors, I'm going to take issue a little bit with the suggestion by the government about the lack of time and the threat and the potential threats that were issued to the witnesses who provided the obliterating evidence. The Indian government had plenty of time to put this execution request together. As Your Honors may know from the procedural history of this case, this is all they came up with. They did not come up with any independent corroboration except for type pieces of paper. As far as threats, I don't think we should be concerned about Mr. Burnapin's or his people who are working on his behalf making the threats. What we should be worried about is the Indian government making threats. The only evidence that a witness is being threatened where a witness is being threatened by the Indian government. Finally, Your Honors, no court has ever found motive as a prerequisite to the political offense exception. And I understand that the district court did a lot to try to sort through all this what has been described as a mess. Maybe at times they got lost.  and not the forest. The district court seems to have punted on some of these cases. And Your Honors, that's what the duty is now of this court to step in and exercise its authority as an appellate court, which the court knows how to do very well. And finally, Your Honors. In your view, what would we say? In your view, what would be the bottom line in this opinion based on this record? I think the easiest decision for this court to reach, Your Honors, is that if the evidence is viewed in the totality of the circumstances and the district court applied their totality, the test that they had applied in some of the cases, applied it evenly throughout, we could not find probable cause based on the
judges: Farris, Trott, Weiner